May it please the Court. My name is James Feldman, and it is my privilege to represent the appellant, John Ligon. There are two reasons why this Court should reverse the district court's denial of quorum nobis relief. First is that the district court erred when it enforced the collateral attack waiver contained in Mr. Ligon's plea agreement. And the second is that it also erred when it held that Mr. Ligon's conviction under Section 924A2 and the continuing applicability of Section 922G1 did not violate the Second Amendment as applied to the facts of this case. With respect to the waiver issue, the Court should not have enforced the waiver for two reasons. The first is that Mr. Ligon did not enter into it voluntarily and knowingly, because when he entered into that agreement, he was under the impression that should this Court vacate, reverse the predicate offense, which was at that time on direct appeal before this Court, that should this Court reverse that, that his gun rights would automatically be restored. Now, the district court rejected that argument because it relied on other cases which had held that when a defendant tries to withdraw his guilty plea because of a – some misunderstanding, that that misunderstanding has to have been caused by the court, defense attorney, or the prosecutor before the Court would entertain that. But the Court of Appeals for the District of Columbia in a recent case, this last year's case, an impact decision, explained why that is so. And the reason is, the Court explained, that in that situation, the Court must balance the rights of the defendant with the prejudice that would – that the prosecution would have if it – if it had to try the case. Counsel, I'm sure you're familiar with the case of Lewis v. the United States. Correct. You must have read it many times. But how do we get around that? No exception, however, is made for a person whose outstanding felony conviction ultimately might turn out to be invalid for any reason. I see Lewis to suggest that your client is responsible for this. So long as he stands as a convicted felon, up until the time when he gets out from under that, he still can't have a firearm. The Lewis case seems to foreclose any argument that you're making. Tell me what I'm missing in Lewis. Well, what you're missing is that – first of all, that the Supreme Court in Heller rejected Lewis, and fairly strongly did. Wait. Is Lewis cited in Heller? I believe – I believe that Heller does talk about Lewis, and – Well, now wait. You know where? Show me where. I'd have to get back to you on that, Your Honor. If I can do that. I don't have that right at my fingertips right now, but that's my recollection. But aren't we bound by Lewis unless the Supreme Court tells us otherwise? Yes. Well, the Supreme Court did, I think, tell us otherwise in Heller. But where in Heller? You know, I mean, you're really upsetting me now because you're making an argument based on something that you – I'm not sure that you know what you're talking about. Well, I'll try to explain. In Heller – If you're going to come to us and tell us Heller rules, please tell me where in Heller it says Lewis is no good. Heller does not state that Lewis is no good explicitly, but I think that that is the conclusion that one must reach. From – I thought you told us a couple of minutes ago that Heller cites Lewis and discusses it. I think that it does, Your Honor, but I – Well, what does it say about Lewis? I can't tell you right here, Your Honor. I'll have to get back to you on that. If you would like, I can submit a letter to the Court afterwards, but that's – Well, it seems that you're unprepared. I mean, you come telling us that Lewis doesn't make any sense, Heller gets rid of it, and you can't tell us where, why, or how. I can tell you why – I can tell you why Lewis doesn't control. That's your question, Your Honor. Sure. Lewis doesn't control because after Heller, the Second Amendment is an individual right. And Heller stated that nowhere in this opinion should not be taken to mean that long-standing statutes such as the prohibition of felons having firearms should be – should be taken to be, you know, unconstitutional. But the footnote to that statement said that the Court was looking at these long-standing prohibitions as presumptively reasonable, which – presumptively constitutional, which means that there can be situations in which, as applied to the particular facts of a particular case, they're unconstitutional. Well, you can suspend a person's constitutional right to almost anything if that person is convicted of a crime. I mean, you send them to jail. Life, liberty, and – You don't suspend someone's Second Amendment rights. Lewis says that Congress effectively said so long as you're in that status, you can't have a gun, period. The fact that later on, you happen to get out from under that status is fine for thereon, but not during the time that you were standing under that – that restricted status. Correct, Your Honor. But – So you – The Second Amendment – You agree that if Lewis stands, you don't have an argument. It's only if Heller undoes Lewis that you have an argument. No, because I don't – I don't say that that's true. Because I think that in Lewis – I think in Lewis's situation was that somebody was convicted and that that conviction – the predicate offense was unconstitutional because I don't think he had proper counsel. There was conflicted counsel, I believe, and that's why the predicate offense was illegal. And the Court said in that situation, you know, you have to wait until – until that conviction is clear. But in this – in this situation, he did wait. I mean, this Court reversed the predicate offense before he came back to – before he came back to try to reverse that – that conviction. And the Third Circuit has held that you can, regardless of Lewis, that you can bring, as applied challenges, to convictions under 924a2 and 922g1. And they said that if the defendant can show that he is not the kind of person that has historically precluded from Second Amendment rights, that 922g1 does not apply to him. And that's what we can do in this case, and that's what the District Court found in this case. Well, as of – at the point where your client was convicted of theft of government property, he understood at that moment that he could not, as a felon, possess a firearm. Is that right? But he believed he would get out from under that if and when he got that conviction reversed. So he knew that he couldn't have a firearm during that time. Correct. And he took the chance and got firearms anyway before it was reversed. He didn't get firearms. He had firearms. He was getting rid of them. He had a collection. He was a longtime collector. He had 160 firearms, which he was donating to a museum. And he had donated, I think, all but 130 of them. The guy was coming to pick up the others, was in town to pick them up. He could have picked them up before the judgment was entered. He didn't. He had firearms, knowing that he couldn't have the firearms. Yes, he did. And we're not challenging his guilty plea to that offense at this point. We're saying that after – But if he knew he couldn't have them, why did he continue to have them? It was a mistake. He took a chance. He took a chance. You know, he was trying to – he was in the process of getting – It was a mistake of law. Pardon? It was a mistake of law, not a fact. Right. But he thought that he was going to get his firearm rights back. And Lewis says you can't do that. Lewis says you can't do that, but it did not address the constitutionality of the Second Amendment as applied to individuals. I don't see how the constitutionality has anything to do with it. Because the conviction of a crime erases all kinds of constitutional – Well, if that law was unconstitutional, then it doesn't. What law was unconstitutional? What's unconstitutional? 924. If 922G1 is unconstitutional as applied to the facts of this case, then –    Mr. LeGon, you can't be waived? Mr. LeGon did not waive his rights, I don't believe. They were taken from him. Well, he pleaded guilty. Yes, he did plead guilty. And did he say at the time that he knew that he couldn't ever have a gun again unless he got a presidential pardon? No, that's not what he said. What he said was that he did not believe that there was anything he could do to challenge his conviction – Other than a presidential pardon. Other than a presidential pardon. What he thought was that as a matter of law, his gun rights would be restored if his predicate offense was reversed. That's what he believed. He would not have waived his right to bring a collateral attack if he had understood correctly that that wouldn't happen. If that's what he thought, why didn't he reserve that right in the plea waiver? Reservations happen all the time. He never discussed this with his attorney? I mean, this is something that he – It's very suspicious. It's hard for me to believe that he thought that. I think it's a very natural thing to think. There's no evidence that he thought of it at all. It looks like an after-the-fact rationalization. Even if Your Honor doesn't accept that, I think that there was a – that nevertheless the waiver should be – to not have been enforced because there was a miscarriage of justice in enforcing it because it deprives someone of a constitutional right. Only if Lewis is no good. I think that Lewis does not apply in this case because the statute is unconstitutional as applied to the facts of this case. Thank you, Your Honor. I will reserve my last three minutes. Do you have a copy of Heller at your desk? Yes, I do, Your Honor. See if you can find the Lewis reference. I will. I'll come back. I'll look for it. Thanks. Good morning. May it please the Court, Elizabeth Olsen for the United States. In answer to Your Honor's question, the Supreme Court in Heller discussed Lewis very briefly in footnote 25 of that decision. It says what? It says that some dicta in Lewis should not be read to make a broad sweeping proposition. It didn't discuss – well, here, let me just find it. Instead of paraphrasing it, why don't you read it to me, please? Okay, let me do that. Footnote 25. It says Miller – they're saying we read Miller to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes. And then there's a footnote that says Miller was briefly mentioned in our decision in Lewis, an appeal from a conviction for being a felon in possession of a firearm. The challenge was based on the contention that the prior felony conviction had been unconstitutional. No Second Amendment claim was raised by any party. In the course of rejecting the asserted challenge, the Court commented gratuitously in a footnote that these legislative restrictions on the use of firearms are neither based upon constitutionally suspect criteria nor do they trench upon any constitutionally protected liberties, citing Miller. The footnote then cites several courts of appeals cases to the same effect. It is inconceivable that we would rest our interpretation of the basic meaning of any guarantee of the Bill of Rights upon such a footnoted dictum in a case where the point was not at issue and was not argued. So what do you think that means? Well, I think, I mean, they don't, they do not discuss Miller in any substantive way. Miller? I'm sorry. Lewis. Lewis in Heller in any substantive way. I don't think there's anything in Heller that can be read as overturning Lewis's holding that Congress clearly intended when someone is under a felony conviction for them to clear up that felony conviction before they possess firearms. And I don't read Heller as making any change in that law. And in fact, you know, what Heller says is that nothing in the opinion should be taken to cast doubt on the longstanding prohibitions of possession of firearms by felons or the mentally ill. And then they go on with a number of other restrictions because of that clear language in Heller, which this Court reiterated in Vonce when this Court said nothing in Heller can be read legitimately to cast doubt on the constitutionality of 922G1. Now, of course, the other side says that's all fine. But here, as applied, it has an unconstitutional effect on. Well, you know, Vonce actually specifically noted that in Younger, and this wasn't in the decision in Younger, but the Vonce panel read the briefs in Younger because they cite the briefs in Younger and say that the defendant was making an as-applied challenge, an as-applied constitutional challenge to 922G. And in Vonce, this Court reiterated, we declined to make a distinction between violent and nonviolent felons, and we held that 922G1, which prohibits all felons from possessing firearms, was constitutional. So if nothing in Heller, I mean, if Heller doesn't provide the defendant a basis for relief, then he has no basis for relief. And what that means is both that there is no substantive basis for relief and there's no excuse. I mean, the time, you know, the procedural bar for quorum nobis relief is that the defendant has to exercise diligence and bring the petition in a timely manner. And what he says is until Heller, I mean, he excuses the delay up until Heller because he says until Heller I had no basis for relief. Well, if Heller doesn't give him a basis for relief, then it also doesn't excuse the delay in waiting nearly five years or more than four years from the time of his conviction to launch this attack, which, by the way, was expressly waived in the plea agreement. You know, a plea agreement is a contract. And in that plea agreement, the defendant knowingly and expressly waived any right to collaterally attack any matter in connection with the prosecution. Do subcircuits recognize exceptions to that kind of a waiver? I believe so. There's the manifest injustice exception, which this court recently in an unpublished decision noted that this circuit has not adopted that manifest injustice exception. I believe that some other circuits do. I'm sorry, I don't have those cases. So this would be a first case where we could consider that? It would be, except that it's not necessary because since Heller provides no substantive basis for relief, there's no manifest injustice. And 922G is constitutional as applied to nonviolent felons, which is what this court said in Vonce, which is what this court said in the unpublished decision in Duckett recently. And so there is no basis for relief, which means that substantively there's no manifest injustice, and procedurally there's no explanation for the delay. Thank you. If the Court has any other questions, I'm happy to address them. Thank you. Your Honor, it turns out I did not have the Heller opinions. I'll have to rely on what Ms. Olson said. But I would like to address one thing that she said, which is about Vonce. I don't think Vonce was not an as-applied case. It does have the words as-applied once in the whole opinion, but it's clearly not referring to an unconstitutional as-applied analysis. They make no such analysis throughout the opinion, and they never say that. In what context do they use the term? They say that. Do you have a copy of the Vonce opinion? Yes. As you can tell, I'm always leery of paraphrasing. Yes. I think I have it. Oh, I actually did have it. No, I don't. Did you have it? I don't know exactly where it is. Okay. In sum, we hold that Section 922G1 does not violate the Second Amendment as it applies to Vonce, a convicted felon. So that sounds like an applied challenge. No, because it's referring to Younger. Younger wasn't an as-applied case. They don't say in this opinion that Vonce made an as-applied challenge. They don't go through any of the analysis necessary for an as-applied challenge. They use the word once. They're just saying it applies to him because he's a convicted felon. That's all it says. That's not an as-applied analysis. Thank you. I think my time is up, so thank you. If you have other questions. The United States v. Ligon will be submitted. Thank you for your oral argument. We'll go to the second case. You can give the Vonce opinion back to counsel. The next case is McCombie Gray v. Bank of America. May it please the Court. This appeal has but one question to be answered. That question is, does the three-year statute of repose contained in 15 U.S.C. 1635F require that the borrower notify the lender of its cancellation of the loan as the plain meaning of 1635A sets forth, or does it require that the borrower file an action within the three years? If I can interrupt you for a second. Do these tolling letters have anything to do with the resolution of this appeal? I do not believe it does, Your Honor.
judges: Pallmeyer, Trott, Bea